21445.  EXECUTIVE COMMITTEE OF THE BAPTIST CONVENTION *et al. v.* SMITH *et al.*

*Jones, Evins, Powers & Jones,* for plaintiffs in error.

*J. Caleb Clarke, Howell, Heyman & Bolding, Marion Smith, Alston, Alston, Foster & Moise,* contra.

Luke, J. This case is before this court for the third time. A brief synopsis of the former proceedings is essential to a clear understanding of the issue now involved. On May 29, 1926, Mrs. Smith filed a suit for damages against the Georgia Baptist Hospital, alleged to be a corporation. She alleged and proved to the satisfaction of the jury that while she was a pay patient at the Georgia Baptist Hospital, and while undergoing an operation there and while lying unconscious and helpless, she was seriously burned and permanently injured (the sight of one eye being practically destroyed and the other very greatly impaired) through the gross negligence of one of the defendant's anesthetists, who, while administering ether to her, allowed it to come in contact with her face and eyes, seriously burning her face, causing her intense and excruciating pain and suffering for many months, practically destroying her eyesight, and leaving her face disfigured for life. Upon the overruling of the defendant's motion for a new trial, it brought the case to this court, and this court held that "the verdict in favor of the plaintiff (for $8,000) was authorized, and none of the special grounds of the motion for a new trial required a reversal of the judgment below." A rehearing was denied by this court and an application for certiorari was denied by the Supreme Court. See *Georgia Baptist Hospital* v. *Smith,* 37 *Ga. App.* 92 (139 S. E. 101). Thereafter Mrs. Smith had summons of garnishment issued, directed to the Atlanta and Lowry National Bank and the Citizens and Southern National Bank, directing them

to answer what money, funds, or property they had on hand belonging to the defendant, Georgia Baptist Hospital. Thereupon the Executive Committee of the Baptist Convention of the State of Georgia, a corporation, filed a claim setting up that at the time of said summons of garnishment the Atlanta and Lowry National Bank had on hand the sum of $546.54 deposited to an account carried as "Georgia Baptist Hospital," and the Citizens and Southern had on hand the sum of $6007.82, deposited to an account carried as "Georgia Baptist Hospital," but that said funds were not the money and property of the defendant in fi. fa., Georgia Baptist Hospital, but the property of the said Executive Committee of the Baptist Convention of the State of Georgia. Thereafter the banks, in reply to the summons of garnishment, answered that they had these respective sums on hand in an account known as the "Georgia Baptist Hospital," but that they were informed and believed, and therefore answered, that said funds belonged to the Executive Committee of the Baptist Convention of the State of Georgia and were not the funds of the defendant Georgia Baptist Hospital. Thereafter Mrs. Smith filed a traverse to said answer, and the traverse and the claim case came on for trial, and the jury, at the direction of the court, found a verdict against the claimant and in favor of the plaintiff in fi. fa., and sustaining the traverse, and judgment was entered against the claimant and the surety on its bond. Thereafter the claimant and its surety on the garnishment dissolution bond made a motion for a new trial, which was overruled, and they brought the case to this court and the judgment of the trial court was reversed on the ground that the record showed that the judgment in the damage suit was against a separate and distinct corporation from the corporation whose funds it sought to subject by process of garnishment. See *Executive Committee* v. *Smith,* 39 *Ga. App.* 417 (147 S. E. 418).

Thereafter Mrs. Smith filed an amended traverse and an amendment to said amended traverse to the answer of the Citizens and Southern Bank, garnishee. Said Executive Committee demurred to said traverse as amended and moved to strike the same, and the demurrers and motion were overruled by the trial judge. The claimant excepted pendente lite to this judgment and now assigns error thereon. Thereafter said claim and said amended traverse came on for trial. It was agreed by all parties that the said

traverse and claim be consolidated and tried as one case, and that the verdict be rendered on the traverse alone, and that the verdict on the traverse should control the said claim also. The jury rendered a verdict sustaining the traverse and finding said funds subject, and judgment was entered adjudging the $6007.82 in the hands of the garnishee subject to the process of garnishment and subject to the judgment obtained by Mrs. Smith in the main suit. The Executive Committee and its surety on the garnishment bond filed a motion for a new trial, and a rule nisi was issued, directing that Mrs. Smith, the Georgia Baptist Hospital, a corporation, and the Citizens and Southern Bank show cause why the same should not be granted. This motion for a new trial, after being amended, was overruled, and to that judgment the movants excepted, and now assign the same as error.

The substance and effect of the amended traverse is that the Executive Committee was the real defendant in the original suit and every stage thereof, that it was the owner and operator of the hospital using the name Georgia Baptist Hospital as a trade name, that said Executive Committee was the real tort-feasor who injured Mrs. Smith, and that therefore said Executive Committee, being the tort-feasor and having defended the suit, is bound by the judgment in favor of the plaintiff. Certain allegations and proofs as shown by the record previously before us, and also embodied in the case sub judice, though strongly persuasive, were, when taken alone, insufficient to show that the Executive Committee had defended the suit. However, these facts, when augmented by vital additional allegations of the amended traverse and proof thereof to the satisfaction of the jury, amply sustained the verdict of the jury and the judgment of the trial court in favor of the traverse and against the claimant. The writer stated in a specially concurring opinion when the case was last before us that "it is inconceivable that the corporation which owned and operated the hospital took no part in defending the damage suit." The record in the present case shows that the Executive Committee, the corporation which owned and operated the hospital, did actually defend the damage suit, as shown by additional allegations and proof not revealed in the record heretofore before us.

The injury complained of was in October, 1925, and the suit was filed in May, 1926. The defense to the original suit was on the

merits of the case, and there was no intimation at that time that the Executive Committee was the real owner and operator of the hospital at the time of the injury. The record in the present case clearly discloses that at the time of and prior to the injury of the plaintiff the Georgia Baptist Hospital was a defunct corporation; that at said time the said hospital was owned and operated by the Executive Committee of the Baptist Convention of the State of Georgia; that the name "Georgia Baptist Hospital" was the trade name under which the Executive Committee was doing business at said hospital; that this was the name under which the Executive Committee did business with the public, rendered bills, issued diplomas, and ran a bank account, and that this name was over the door of the hospital; that the Georgia Baptist Hospital as a corporation was never served with the suit in this case and never defended the case; that the Executive Committee was served with the suit and did defend it, thereby defending its own alleged wrongful act and protecting its own property. There is no effort on the part of the plaintiff in fi. fa. to alter the judgment or substitute a new party, but her contention is that since the Executive Committee was the party which injured her, contracted with her in its trade name, was sued under said trade name, and defended the suit filed in that name, it is bound by the judgment rendered. The evidence shows that the plaintiff was injured on October 15, 1925, when the Executive Committee owned and operated the hospital, and the Georgia Baptist Hospital, as a corporation, was inactive and defunct; that in March, 1925, seven months before the injury, the Georgia Baptist Hospital had deeded all its property to the Executive Committee, and that the Executive Committee had really taken over and operated the hospital since May, 1922, three years and five months before the injury to plaintiff. Dr. Arch C. Cree testified: "The Executive Committee took over the operation of the hospital . . on May 4, 1922, and they have operated it from that time on. It was March 31, 1925, we got a deed." The undisputed evidence shows that the Executive Committee was dealing with the public under the trade name of Georgia Baptist Hospital, had that name over the door, issued diplomas and ran a bank account in that name, and contracted with patients in that name. There is nothing to show that the Georgia Baptist Hospital, as a corporation, was ever served with the suit in question. So far

as the record shows, the Georgia Baptist Hospital was run by the Executive Committee from 1922 to 1925, and in 1925 a meeting was called and officers elected for the purpose of making a deed conveying the property of the Georgia Baptist Hospital to the Executive Committee. Mr. A. J. Orme was elected president and Mr. Carlton Binns was elected secretary. Mr. Orme testified in part: "I was at one time president of the old Georgia Baptist Hospital, the Fulton County corporation, it seems for the purpose of making a deed . . there was a reorganization. . . If either of these suits which you say were filed on the 29th of May 1926 by Mr. and Mrs. L. M. Smith were ever served on me I have no recollection at all of it . . *I have no recollection of ever having anything to do with these suits at all personally. In fact I do not think I ever saw them at all* (italics ours). If I ever saw them I have forgotten it. . . After the title was turned over to the Executive Committee there was a board elected by the Executive Committee. I do not think the old corporation [Georgia Baptist Hospital] functioned any more." Mr. Carlton Binns testified in part as follows: "I was elected secretary of the board of trustees of the old Georgia Baptist Hospital. . . At the meeting at which I was elected secretary the members of the board of trustees received notice that there would be a meeting of the board. When we got there, if my memory serves me correctly—that was probably six years ago,—we were told that in order to finance the new hospital building that was to be put up, there had been some arrangements made whereby the old hospital was to transfer its property to the Executive Committee of the Baptist Convention of the State of Georgia, which was a corporation. . . Those present at that meeting organized and elected Mr. A. J. Orme president, and elected me secretary, and a motion carrying out that general idea was passed about the transfer of the property and later on some papers were prepared. . . I recall that I signed them as secretary of that meeting that day and as secretary of the board. I refer to the deed transferring the property to the Executive Committe. . . . Prior to that time, as I remember it, the hospital had been operated by the Executive Committee, . . it had been operated by the Executive Committee some time prior to the making of this deed, . . since that deed was made on March 31, 1925, the corporation of which I was a trustee owned no property whatever.

My understanding was that we were deeding all of the property of the corporation [Georgia Baptist Hospital] over to the other corporation [Executive Committee of the Baptist Convention of the State of Georgia], leaving the Georgia Baptist Hospital, the Fulton County corporation, without any assets at all. Since that time, so far as I know, the Georgia Baptist Hospital has not operated any hospital at all. I can say that so far as any action on my part, it has not. I may say further that that was the only paper that I recall that I ever signed as secretary for that board of trustees, so my activities had not been very extensive. So far as I know, there has not been a meeting of the board of trustees or directors since then, of the old corporation. I have not received any notice of any meeting. *No suit was ever served on me in the case of Smith vs. Georgia Baptist Hospital* (italics ours). . . No expenses were paid by the Georgia Baptist Hospital, the Fulton County corporation, with reference to that suit." This evidence of the president and the secretary of the Georgia Baptist Hospital corporation clearly shows that said Georgia Baptist Hospital corporation had been inactive for several years prior to the injury of plaintiff, that they had only one called meeting, and that for the purpose of deeding all of the hospital's property to the Executive Committee, and this was prior to plaintiff's injury, and they did not meet again, and that the hospital officers were never served with the suit and did not defend the suit. The entire record corroborates this evidence.

The evidence further shows that at the time of the injury to the plaintiff the hospital was managed by Arch C. Cree as executive secretary and treasurer of the Executive Committee of the Baptist Convention of the State of Georgia and by Dr. Elder, an employee of the Executive Committee, who was known as resident superintendent; and that service of the petition in this case was made on Arch C. Cree while he was an officer of the Executive Committee corporation and was not an officer of the Georgia Baptist Hospital Corporation. ·

Now we come to the vital additional facts disclosed by this record, which facts were not before us when the case was last in this court, and which facts, together with the evidence heretofore referred to, show conclusively that the Executive Committee was the real tortfeasor, was the party at interest, was the party which defended the suit, and is bound by the judgment. Plaintiff introduced in evi-

dence an insurance policy issued by the New Amsterdam Casualty Company, which, for a consideration, indemnifies the assured against loss on account of injuries of "patients under treatment at the hospital described in the schedule in consequence of any malpractice, error, or mistake occurring in the course of said treatment," and agrees "to defend in the name and on behalf of the assured any suit brought against the assured to enforce a claim," and provides that "the assured shall give immediate written notice" of any claim, and "the assured shall immediately forward to the Company every summons or other process, as soon as the same shall have been served upon him, and the Company will defend such suit whether groundless or not, *on behalf of the assured*" (italics ours), and that the expense incurred shall be borne by the insurance company, and that the "assured shall aid in securing information and evidence and the attendance of witnesses in effecting settlements and in prosecuting appeals." The schedule attached to and made a part of the insurance policy is as follows: *"Name of the assured: Executive Committee of the Baptist Convention of the State of Georgia* [italics ours]. Address of the assured: 18 East Ave., Atlanta, Ga. The assured is a corporation. The location of the hospital is 18 East Ave., Atlanta, Ga. The kind of hospital conducted is private, surgical, general cases." The undisputed evidence shows that the insurance company defended the litigation from beginning to end, employed and paid lawyers, and paid all expenses; and that it defended the suit filed against the Executive Committee under its trade name, and the contract of insurance clearly shows that the insurance company defended "on behalf of the assured," the "Executive Committee of the Baptist Convention of the State of Georgia." The insurance company was given notice of the claim and suit. Whether this notice was given by Dr. Cree, the secretary and treasurer of the Executive Committee, or by Dr. Elder, an employee of the Executive Committee, is immaterial. Neither of them was an officer of the hospital corporation; and there is not one scintilla of evidence that the hospital corporation gave the insurance company notice of the suit, or that the insurance company was under contract or obligation to defend a suit in behalf of the hospital corporation. The insurance company's contract was with the Executive Committee corporation and it was in behalf of the Executive Committee corporation that the insur-

ance company defended the suit in compliance with its contract. Dr. Arch C. Cree testified in part as follows: "I am not an officer of the Georgia Baptist Hospital, a corporation. My employer, the Executive Committee, owns and operates the hospital. . . I am the executive secretary of the committee . . I am secretary and treasurer of the Executive Committee of the Baptist Convention of the State of Georgia, and that committee is operating the hospital. We call the hospital by the old name, Georgia Baptist Hospital. . . These bills were sent out by the Executive Committee of the Baptist Convention of the State of Georgia. . . We just carry the accounts and send bills and carry the name of these various institutions under a *trade name* [italics ours] for convenience. . . We took over the physical properties of the Georgia Baptist Hospital (deed) . . the 31st day of March, 1925 . . I was not an officer of the Georgia Baptist Hospital, a corporation. . . We took over the hospital the 1st day of May, 1922. . . I knew Dr. E. B. Elder. He was employed as assistant superintendent. I employed him. That was after we took over the hospital. Later we dignified the position he held. Instead of calling him assistant we named him resident superintendent. He was an employee of the Executive Committee; not a member of the Executive Committee or an officer of the Executive Committee, he was simply hired to do the actual operating work in the hospital. . . I employed him myself. He had no connection with the corporation from whom our corporation bought, known as the Georgia Baptist Hospital. He never had any connection with it. He was not even an officer of either corporation. He was just employed by me. I have knowledge that we carry liability insurance. We always had insurance. We have had insurance with the New Amsterdam . . I looked after all of the larger financial matters, and Dr. Elder ran the hospital. In a way Dr. Elder was under my supervision and direction . . I was assured that the insurance policy would cover all costs . . I was told that the insurance company would protect the costs all the way through . . I just thought that if there was protection for part of it, there would be protection for all of it. I knew that we had protection on it, so I spoke to Mr. Marion Smith and asked him 'What about this cost, does the insurance company's responsibility cover that?' Then I got this letter confirming it. . . Looking

at this paper which is handed me I would assume that the policy referred to in that paper would be authorized by me, the proposition of carrying this much liability and paying this premium would be decided by me as Executive Secretary." A. D. McGaughey testified in part as follows: "I am the agent in Atlanta, Georgia, of the New Amsterdam Casualty Company. There is no letter, to my knowledge, from the Georgia Baptist Hospital in connection with this claim; . . the matter was referred to Mr. Smith of Little, Powell, Smith & Goldstein, *our* [italics ours] general attorneys. . . Little, Powell, Smith & Goldstein were not the attorneys employed by me to defend this suit, but by the *New Amsterdam Casualty Company* [italics. ours]. Looking at these papers I can say there was a policy issued by the New Amsterdam Casualty Company to the Georgia Baptist Hospital, February 12, 1925, covering the Georgia Baptist Hospital under the terms and conditions of the contract which was in force up to June 15, 1925; this policy was changed *to protect and insure the Executive Committee of the Baptist Convention of the State of Georgia, and it ceased to cover the Georgia Baptist Hospital as originally written* [italics ours]. . . The change indicated by this endorsement was actually made on June 15, 1925 [four months before the injury to plaintiff]. . . As for Mr. Smith's fee being paid in the original case for defending it, and who paid the other expense, cost of court, appeal costs, stenographer's fee, and such like . . , Mr. Smith says these expenses were all paid by the New Amsterdam Casualty Company through his office."

Mr. Marion Smith testified in part as follows: "I am the attorney for the defendant in the case of Mrs. L. M. Smith *vs.* Georgia Baptist Hospital, No. 68260, in Fulton superior court. I got the petition from somebody connected with the New Amsterdam Casualty Company. . . *My employment to represent the defendant in that case was by the New Amsterdam Casualty Company* [italics ours]. . . No part of the expense connected with the suit was paid by the Georgia Baptist Hospital nor by anybody else except the New Amsterdam Casualty Company. So far as I know, the New Amsterdam Casualty Company did not have any liability policy covering the old [Georgia Baptist Hospital] corporation. . . The only policy I know of covering accidents at all with the Georgia Baptist Hospital out there is the one that is covered

by this daily report that is produced by Mr. McGaughey [referring to policy insuring the Executive Committee]. . . I would state that it was because of the existence of that policy that I was employed in this particular matter. . . There was no part of the expense of that case paid by anybody except the New Amsterdam so far as I know or have reason to believe. . . As to knowing at the time this suit was filed and we were defending it what the Georgia Baptist Hospital, the Fulton County corporation, was doing, and whether it operated any hospital or not, I knew that some time during the defense of the case, . . it was pretty well toward the beginning, I believe, that I knew that it was not operating the hospital. The information that I used in the defense of that suit . . came from some agent of the New Amsterdam Casualty Company, I am sure. . . I knew Mrs. Smith was injured in that building, and my information about the time of the trial was that at the time of her injury the Georgia Baptist Hospital, a corporation, was not then operating the hospital. As to why, at the trial which was held February 23, 1927, I did not bring out the fact that the Georgia Baptist Hospital, a corporation, had nothing to do with the transaction, but set up a defense on the merits of the suit, it was because, in my judgment as an attorney, it was not to the interest of my client to do so. . . I felt, in my judgment as attorney, that it was not to my interest or to the interest of my client for me to volunteer this information."

Plaintiff in error contends, in substance, that Mr. Binns authorized Mr. Smith to defend the hospital corporation. The testimony in this connection shows that Mr. Smith called up Mr. Binns and asked permission to use the hospital's name in defending the suit, and upon being assured that it would cost the hospital nothing, Mr. Binns said "Go to it." The fact that Mr. Smith got permission to use the name of the hospital in defending the Executive Committee in no way affects the merits of the contention of the plaintiff in fi. fa. The evidence is undisputed that the hospital as a corporation never employed any attorneys. The entire record shows that the Executive Committee owned and operated the hospital at the time of plaintiff's injury, that it was the real tortfeasor, and that it, through the insurance company, defended the suit throughout the litigation.

■ The Executive Committee of the Baptist Convention of the

State of Georgia, claimant, demurred generally and specially to the traverse filed by plaintiff in fi. fa. to the answer of the Citizens and South̄ern National Bank, garnishee. Said demurrer alleges, among numerous other things not necessary to discuss in detail, that the allegations of plaintiff in fi. fa. do not constitute a traverse to the answer; that the plaintiff admitted that she had judgment against the Georgia Baptist Hospital, a separate and distinct corporation from the claimant, and "that the facts alleged in said amended traverse do not entitle the plaintiff in fi. fa. to subject the funds in the hands of said garnishee to plaintiff in fi. fa.'s judgment and execution." A traverse is a denial. The bank answered that "none of said property, money, or funds is subject to process of garnish̄ment," and the plaintiff in fi. fa. denied this material allegation. Plaintiff in fi. fa. denies also that the funds being in the name of the Georgia Baptist Hospital exempts or excludes said funds from being subject to the execution of the plaintiff in fi. fa., and contends that the Georgia Baptist Hospital was the trade name under which the Executive Committee was operating and that the facts alleged in the amended traverse entitled the plaintiff in fi. fa. to subject the funds in the hands of said garnishee to the plaintiff in fi. fa.'s judgment and execution. While the demurrer of the claimant was necessarily passed upon by the judge, all the issues involved in the claim case and the traverse were fully and fairly submitted to the jury, and by agreement of the parties were passed upon together, and the controlling principles of law will hereinafter be discussed. The trial judge did not err in overruling the demurrers.

In dealing with the motion for a new trial we will discuss controlling principles of law only. It is alleged therein that the court erred in charging the jury as follows: "As an abstract principle of law, I instruct you that if a wrongdoer defends a suit, then he or it is bound by the judgment of the court in a case in court in which he or it is the wrongdoer, and which suit he or it defends. In other words, if the Executive Committee corporation was the wrongdoer in the suit against the Georgia Baptist Hospital, and if the Executive Committee, by its agents or officers, defended that suit before the jury and through all the courts, then it (the Executive Committee corporation) would be bound by that judgment, so far as the contest over the funds in controversy is con-

cerned." Also that the court erred in charging as follows: "I charge you that a party may defend a suit in an assumed name. Where a party goes into court to defend a suit and for a purpose adopts some name other than its own, such party would be bound by a judgment rendered against such party in the name so used." The record shows that this claim was turned over to attorneys by the insurance company which was acting in behalf of the. assured, the Executive Committee; but even should there be any irregularity in the service on the assured, their "appearance and pleading shall be a waiver of all irregularities of the process, or of the absence of process and the service thereof." Civil Code (1910), § 5559.

■ It must be borne in mind that the Executive Committee owned and operated the hospital at the time of the injury to the plaintiff. In the decision in the case of *Benson* v. *Shines*, 107 *Ga.* 406 (33 S. E. 439), it was said: "While McCrory [the owner] was not made a party in the petition and while process was not prayed against him, and while there was no order taken in the county court to make him a party, we think his appearance in the court by filing a demurrer and a plea to the merits and introducing testimony thereunder made him a party to the action and he was bound by the judgment against his property. A person who is interested in the result of litigation may voluntarily make himself a party thereto by appearing and pleading, although he is not mentioned as a party in the petition, which prays no process against him." In the case of *Clark* v. *Wyche*, 126 *Ga.* 24 (54 S. E. 909), Mrs. Wyche conducted business in the name of George Foundry and Machine Works. Clark Brothers gave a mortgage to the Machine Works for certain repairs. The mortgage was foreclosed and Clark Brothers filed a plea of recoupment and obtained a verdict. Up to this stage of the proceeding the name of Mrs. Wyche did not appear. Clark Brothers sought to enforce collection by process of garnishment. Mrs. Wyche then claimed the funds sought to be garnished, claiming that the judgment against the George Foundry and Machine Works was not binding upon her individually, for the reason that she was not a party to the suit and was not bound. In the decision of the Supreme Court it was said: "The only reasonable construction of the evidence leads to the conclusion that Mrs. Wyche conducted the foundry and machine works, employing the assumed name merely for the purpose of convenience.

It was her business and she was the real person at interest. The fact that she conducted the business under a separate name rendered the business no less her individual enterprise, and rendered her no less responsible for its obligations. Under circumstances such as connect Mrs. Wyche with the George Foundry and Machine Works as indicated by the record in this case, the presumption is that the taking of the mortgage and proceeding to foreclose the same was at her instance and direction. It was competent for her to assume any business name which she desired, and any contract which she may have made thereunder will be binding upon her. So if she sues under that name she would afterwards be estopped from denying the binding effect of the judgment should the result be unfavorable to her. 'There is nothing so sacred in a name that right and justice should be sacrificed to its sanctity.' . . Under the admission and the presumption arising thereunder that learned counsel in good faith prosecuted the mortgage foreclosure at the instance and request of Mrs. Wyche, she will be regarded as the real party plaintiff and held bound by the judgment rendered in that proceeding. It happens that the defendants recovered a judgment in that case against the plaintiff, not under her real, but under her assumed name. When it comes to enforce that judgment, she will be estopped in her true name or any other name from denying its validity."

In the case of Boehmke v. Northern Ohio Traction Co., 88 Ohio St. 156 (102 N. E. 700), Boehmke entered suit against the A. B. C. Co., for personal injuries received by him as he was about to enter a passenger car. Before the date of the injury the A. B. C. Co. was merged with another company and formed a company known as the N. O. T. Co., but the cars of the A. B. C. Co. still bore their name, and the plaintiff and his attorneys believed that the company of the same name still owned and operated the railway when the petition was filed. Summons was served on the A. B. C. Co. The answer to the petition was filed as the answer of the A. B. C. Co., but it was prepared and filed at the instance of the N. O. T. Co., and by the lawyers of the N. O. T. Co., who signed as attorneys for the A. B. C. Co., though they were then under pay of the N. O. T. Co. In reversing the circuit court and affirming the judgment of the common pleas court in favor of the plaintiff, the Supreme Court of Ohio said in part: "The notion of separate entity

is only a figment of the mind, not appropriate to the case at bar, for the tort-obligor here is the N. O. T. Co., not the A. B. C. Co. . . the N. O. T. Co. admits that the answer which its attorneys filed in the case was only ostensibly the answer of the A. B. C. Co.; that the N. O. T. Co. requested its attorneys to prepare and file the answer, and paid them for that service. The inference is that the service was rendered for the N. O. T. Co., at whose instance it was performed, and that the service was for the benefit of the latter company, which paid for the service to defend it from liability for its own wrong. The conclusion, therefore, must be that the attorneys for the N. O. T. Co., who appeared only ostensibly for the A. B. C. Co., which was sued by mistake, appeared in fact as attorneys for and in behalf of the N. O. T. Co. . . The real party who did the wrong complained of was in court. It operated the railway on which it invited the plaintiff to become a passenger, under the name A. B. C., published on the cars. The plaintiff naturally mistook the A. B. C. Co. for the owner and operator of the railway, and sued it for his damage instead of the N. O. T. Co., the real party responsible for his injury. . . The clever argument made by counsel for defendant in error is that the N. O. T. Co. was free to let the plaintiff deceive himself to the end of time; it was not the defendant's duty to 'undeceive him.' True, and counsel frankly admits that the defendant was aware of plaintiff's mistake but contributed in no way to that mistake. True, also. But that mistake became a mere irregularity in the judicial formulary of the suit when the real party came to the defense wearing the mask of the formal party. A court of law is a dangerous place for masquerade, for the law looks beneath the apparent and beholds the real. Counsel naively assert that the N. O. T. Co. had a perfect right to employ counsel to defend for the A. B. C. Co. Yes, but at the risk of being substituted as soon as the plaintiff discovered he had sued the wrong company and that the right one was in court defending. Counsel's mistake was in thinking their client could enjoy the privilege of defending a lawsuit and dodge the responsibility that goes with it. Assenting to the plaintiff's mistake, the defendant accepted the suit and thus cured the irregularity. 'Consensus tollit errorem is a maxim of the common law and the dictate of common sense,' says Broom, citing Coke, 'for qui tacet consentire videtur.' The defendant's innocent mistake

of law neatly and effectually corrected the plaintiff's innocent mistake of fact."

In Central Consumers' Company v. Ralston, 202 Ky. 94 (259 S. W. 67), Central Consumers' Company, a Kentucky corporation, took over the properties of Frank Fehr Brewing Company, but continued to use the name Frank Fehr Brewing Company as a trade name in conducting part of its business. Ralston was injured in Tennessee by a team provided by the Central Consumers' Company to be operated in carrying on the business in the name of Frank Fehr Brewing Company and he brought suit against the Frank Fehr Brewing Company. The Court of Appeals of Kentucky said "It is thoroughly established by the record, and not controverted by brief of appellant, that appellant, Central Consumers' Company, was the sole owner of the Frank Fehr Brewing Company, which operated the place in Nashville at the time of the injury of Ralston, and that the Frank Fehr Brewing Company, under which its business was operated in Nashville at the time of the injury of Ralston, was a fictitious name employed by appellant for the purpose of concealing its identity, as well as for the purpose of enjoying the benefits of that trade name. . . Under the common law of Kentucky, which we must presume, in the absence of proof, although averred, was and is the same as that of Tennessee, a party defendant to an action, who appears and defends a proceeding brought against him or it in a fictitious name, without disclosing to the court his or its true and correct name, is concluded by the judgment of the court in the same manner and to the same extent as if he or it had been sued in its proper name. . . We conclude, therefore, all these facts considered, that the judgment given Ralston against the Frank Fehr Brewing Company, obtained in Tennessee and valid there, is valid here, and inasmuch as the Central Consumers' Company was the owner and operator of the Frank Fehr Brewing Company's wagon and team and business in Nashville at the time it struck and injured appellee, Ralston, it was the real party defendant in that trial, and when its employed counsel prepared and presented defense in that case it had its day in court, and the enforcement of this judgment in the Jefferson circuit court will not in any sense amount to a taking of its property without due process of law."

The case of Eslinger v. Herndon, 158 Ga. 823 (124 S. E. 169),

held inapplicable to the case when it was last before this court, is rendered applicable by the additional facts embodied in the instant case, showing that the Georgia Baptist Hospital Corporation was not served, and that the Executive Committee corporation, which owned and operated the hospital at the time of the injury, defended the suit under the trade name of Georgia Baptist Hospital. In the *Eslinger* case it appeared that Herndon was doing business as Herndon Motor Company, and judgment was rendered against the Herndon Motor Company. The Supreme Court held that "A judgment rendered against a person in his assumed or trade name is not void." Justice Hines, speaking for the court, said: "So we are of the opinion that when E. O. Herndon was doing business under the trade name of Herndon Motor Company, and a summons of garnishment was directed to the Herndon Motor Company and personally served on Herndon, and judgment was subsequently obtained in the garnishment proceeding against the Herndon Motor Company, such judgment was not a nullity and was binding upon Herndon."

In Lamberton v. Dinsmore, 75 N. H. 574 (78 Atl. 620), it was held that a judgment binds not only those shown by the record to have the right to defend, but also those who assume that right. In the case of Schmidt v. Louisville, C. & L. Ry. Co., 99 Ky. 143 (35 S. W. 135), it appears that the Louisville, C. & L. Co. had no property or means to conduct a defense, but had only a franchise, and that the Louisville & Nashville Railroad Co. took charge of the defense of the case, controlled it, employed counsel, produced evidence, and paid the expenses of the nominal defendant in the suit. In the opinion in that case the court quoted approvingly from another decision as follows: "In our opinion, not only according to unvarying authority on the subject, but on the principle of estoppel and common fairness, when a party enters his appearance and makes his defense to an action, he can not afterwards complain of the judgment that may be rendered against him, upon the ground that he was sued by the wrong name, or, what is practically the same thing, that the name of a different person was inserted in the caption of the petition and in the summons; and it therefore necessarily follows that the action must be regarded as commenced and actually pending against him, at least from the time he so enters his appearance, if not from the time he is served with

the summons." In the concluding part of the opinion the court said: "In our view, the facts stated in the amended petition did not give the appellants the right to file a petition making the Louisville & Nashville Railroad Company a party defendant to this litigation, for, upon the theory of that amendment, and considering the facts therein stated to be true, *that company was already a party defendant, and bound by the judgment.*" (Italics ours.)

We have carefully examined the cases cited by the plaintiff in error. A detailed discussion of them would render unnecessarily long this already rather lengthy opinion. It suffices to say that each of them is differentiated by its facts from the case under consideration, and therefore is not controlling authority herein.

■ There being ample evidence to show that the Georgia Baptist Hospital had no physical properties and was inactive as a corporation at the time of the injury to the plaintiff, that it was never served with and did not defend the suit in this case, that said hospital was owned by the Executive Committee of the Baptist Convention of the State of Georgia and was operated by it under the trade name of Georgia Baptist Hospital at the time of the injury to the plaintiff, that the Executive Committee was the wrongdoer, was served with the suit, and appeared and defended the action; and there being ample evidence to support the jury's verdict finding in favor of the traverse to the answer of the bank and holding the funds of the garnishee bank subject to the judgment of the plaintiff in fi. fa., and no reversible error of law being pointed out by the motion for a new trial, there is no reason in law, good morals, or justice why the Executive Committee should not be bound by the judgment in this case, and we therefore hold that the trial court did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*